UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENT W. SWISHER,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>E. VALENZUELA,<br><br>　　　　　Respondent. | No.  2: 12-cv-0844 KJN P<br><br><br>ORDER |

Introduction

　　　　Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C § 2254.  The parties consented to the jurisdiction of the undersigned.

　　　　Petitioner challenges his 2009 conviction for evading a peace officer with reckless driving (Cal. Veh. Code § 2800.2(a)), and driving with a suspended or revoked driving privilege, a misdemeanor (Cal. Veh. Code § 14601.1).  The trial court found true the allegations that petitioner had previously been convicted of a serious felony and that he had served six prior prison terms following felony convictions.  Petitioner was sentenced to a total of ten years in prison.

　　　　The petition raises two claims:  1) violation of the Confrontation Clause; and 2) ineffective assistance of counsel.  After carefully reviewing the record, the undersigned orders the petition denied.

1

Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's

1   determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded
2   jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,
3   131 S. Ct. 770, 786 (2011).
4   　　　　The court looks to the last reasoned state court decision as the basis for the state court
5   judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision,
6   "and the state court has denied relief, it may be presumed that the state court adjudicated the
7   claim on the merits in the absence of any indication or state-law procedural principles to the
8   contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing
9   that "there is reason to think some other explanation for the state court's decision is more likely."
10  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).
11  　　　　"When a state court rejects a federal claim without expressly addressing that claim, a
12  federal habeas court must presume that the federal claim was adjudicated on the merits – but that
13  presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct.
14  1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a
15  federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de
16  novo review of the claim. Id., at 1097.
17  　　　　Where the state court reaches a decision on the merits but provides no reasoning to
18  support its conclusion, the federal court conducts an independent review of the record.
19  "Independent review of the record is not de novo review of the constitutional issue, but rather, the
20  only method by which we can determine whether a silent state court decision is objectively
21  unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned
22  decision is available, the habeas petitioner has the burden of "showing there was no reasonable
23  basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must
24  determine what arguments or theories supported or, . . . could have supported, the state court's
25  decision; and then it must ask whether it is possible fairminded jurists could disagree that those
26  arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at
27  786.
28  ////

Factual Background

After independently reviewing the record , the undersigned finds that the summary of petitioner's offenses contained in the opinion of the California Court of Appeal is accurate. That summary is set forth herein:

> FACTUAL AND PROCEDURAL BACKGROUND
>
> On January 22, 2009, shortly before midnight, officer Ryan Piercy was on patrol in a marked vehicle in Woodland, California. He observed a white Nissan being driven by defendant. Cayce Webster was a passenger in the vehicle. As Piercy turned to follow the Nissan, it accelerated through a stop sign without stopping. Piercy activated his red lights and turned on the siren. The Nissan ran a red light at approximately 70 to 75 miles per hour. The Nissan continued on with Piercy in pursuit at approximately 90 miles per hour. The speed limit was 25 miles per hour in the residential areas, and no more than 35 miles per hour in the other areas. Defendant ran another stop sign and three more red lights. Defendant finally stopped in front of his mother's house and got out of the Nissan.
>
> The entire incident lasted nine minutes and covered approximately four miles. It was captured on the police car's video. The video was played for the jury.
>
> Defendant's DMV record was admitted into evidence showing that his driver's license was in a revoked status on the date of the incident.

(ECF No. 13 at 6-7).

Claim One – Alleged Violation of the Confrontation Clause

A federal court looks "'to the last reasoned decision of the state court as the basis of the state court's judgment.'" Merolillo v. Yates, 663 F.3d 444, 453 (9th Cir. 2011) (quoting Womack v. Del Papa, 497 F.3d 998, 1002 (9th Cir. 2007) (internal quotation marks omitted)). "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" Id. (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Here, the last reasoned state decision was that of the California Court of Appeal. (See Respondent's Lodged Document 5 (summary denial of petition for review by California Supreme Court).) Accordingly, the undersigned considers whether the denial of this claim by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority.

The California Court of Appeal denied petitioner's Confrontation Clause claim for the reasons stated herein:

> Unavailable Witness
>
> Officer Piercy testified at defendant's preliminary examination on April 28, 2009. At that time, he was still employed by the Woodland Police Department. A trial date was not set until July 20, 2009, and by that time, Piercy was no longer employed by the department. A subpoena was issued for Piercy on August 17, 2009. Trial commenced on September 8, 2009.
>
> The prosecution was unable to locate Piercy to serve the subpoena, and after an evidentiary hearing on the issue of the prosecution's reasonable diligence in trying to locate Piercy, the trial court determined Piercy was unavailable as a witness within the meaning of Evidence Code section 240, and allowed a redacted version of Piercy's preliminary hearing testimony to be read to the jury.
>
> At the evidentiary hearing the prosecution presented evidence that an investigator went to an address obtained from the Woodland Police Department "several times" in an attempt to locate Piercy. When the investigator finally made contact with someone at the address, he was informed by the current resident that Piercy no longer lived there.
>
> The investigator then checked DMV records and several on-line public databases for information on Piercy. The investigator located one Shasta County address, which he thought might be Piercy's family's residence. He called the number listed for that address and left a message, but got no return call.
>
> The investigator checked with the Employment Development Department to try and track Piercy through an employer, but found no more recent employer than the City of Woodland Police Department.
>
> Another investigator obtained Piercy's last cell phone number from the Woodland Police Department and left a message on that number. That investigator went to another address in Sacramento on Friday, September 4th (the Friday before the Tuesday trial date), and was informed by the resident that Piercy previously had lived there with his girlfriend, Jennifer, and that the resident worked with Jennifer and would see Jennifer that night. On Saturday, the resident informed the investigator that Jennifer had not come to work the night before.
>
> The investigator spoke to the manager at Jennifer's place of work and obtained Jennifer's last name. He checked her DMV records, to no avail. He also had the manager send Jennifer an e-mail asking her to get in touch. He also tried leaving another message with Piercy.

////

The prosecutor testified that he was aware that Piercy was no longer employed at the department, but nevertheless believed he would be amenable to service. He was not aware of any difficulties in serving Piercy in any other matters.

Evidence Code section 1291 provides in pertinent part that evidence of former testimony is not inadmissible hearsay if the declarant is unavailable as a witness. Evidence Code section 240 in turn provides, in pertinent part, that a declarant is unavailable as a witness if the party seeking to introduce the statement has exercised "reasonable diligence," but has been unable to procure the witness's attendance in the proceeding. When the requirements of Evidence Code section 1291 are met, a defendant's constitutional right of confrontation is not violated by the admission of former testimony. (People v. Friend (2009) 47 Cal.4th 1, 67.)

Defendant argues the prosecution was not reasonably diligent in procuring Piercy's presence, primarily because no effort was made to locate Piercy until three weeks prior to trial, but also because the prosecution's investigators did not check utility records or City of Woodland pay records, and did not do sufficient follow-up.

We independently review the trial court's determination that the prosecution's efforts constituted due diligence. (People v. Cromer (2001) 24 Cal.4th 889, 901.) Due diligence depends on the facts of each individual case. (People v. Sanders (1995) 11 Cal.4th 475, 523.) A court must consider the totality of the proponent's efforts to procure the witness's presence, including the character of the efforts taken, the timeliness of the efforts, and the proponent's reasonable belief that the witness would willingly appear. (Ibid.)

The prosecution's failure to subpoena Piercy until three weeks prior to trial does not negate a finding of due diligence under the facts of this case. Although defendant's trial counsel made much of the fact that the preliminary hearing was conducted some five months prior to trial, no trial date was set until July 20, 2009, only about seven weeks before the start of trial, and about four weeks before the subpoena issued. Also, as the prosecutor indicated, he did not realize Piercy would be difficult to locate, and in fact assumed he would respond to service because police officers typically are responsive to service. Under these facts, we deem a three-week period for service to be timely. Other cases have found such a search timely on shorter notice. (People v. Saucedo (1995) 33 Cal.App.4th 1230, 1236, overruled on another point in People v. Cromer, supra, 24 Cal.4th at p. 901 [eight days before trial]; People v. Smith (1971) 22 Cal.App.3d 25, 31 [one week before trial]; People v. Rodriguez (1971) 18 Cal.App.3d 793, 796-797 [six days before trial]; People v. Benjamin (1970) 3 Cal.App.3d 687, 697, disapproved on another point in People v. Brigham (1979) 25 Cal.3d 283, 292 [four days before trial].)

We also reject defendant's brief argument that more could have been done to locate Piercy. Due diligence "connotes persevering application, untiring efforts in good earnest, efforts of a substantial character.'" (People v. Cromer, supra, 24 Cal.4th. at p. 904.) The

6

> fact that additional efforts could have been made does not defeat the determination of due diligence. (People v. Diaz (2002) 95 Cal.App.4th 695, 706.) The law requires reasonable efforts to locate the witness, not perfection. (Ibid.) The efforts made by the prosecution's investigators in this case were of a substantial character, and were reasonable under the circumstances of the case.

(ECF No. 13 at 7-11).

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford v. Washington established that "testimonial" out-of-court statements were barred under the Confrontation Clause unless the witness was unavailable and the defendant had a prior opportunity to cross-examine the witness. See Crawford v. Washington, 541 U.S. 36, 59 (2004); Flournoy v. Small, 681 F.3d 1000, 1004 (9th Cir. 2012) (citing Crawford). Crawford also noted that prior testimony given at a preliminary hearing qualifies as "testimonial." Crawford, 541 U.S. at 57–58, 68.

The Supreme Court has held that "a witness is not 'unavailable' for purposes of the . . . confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 724–25 (1968). However, "the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." Hardy v. Cross, 32 S.Ct. 490, 495 (2011) (per curiam). Where AEDPA's deferential standard of review applies, a federal habeas court may not overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken; rather, under AEDPA, if the state court decision was reasonable, it cannot be disturbed. Id.

Furthermore, the admission at trial of preliminary hearing testimony given under circumstances closely approximating those that surround the typical trial – with the witness under oath before a judicial tribunal equipped to provide a judicial record of the preliminary hearing, with the defendant represented by counsel, and where the defense had an adequate opportunity to cross-examine the witness – generally does not violate the Confrontation Clause. See California v. Green, 399 U.S. 149, 165 (1970).

For the following reasons, the undersigned finds that the California Court of Appeal's finding that the prosecutor made a good faith effort to locate Piercy was not an unreasonable application of clearly established Supreme Court authority. During the hearing addressing the unavailability of Piercy, the prosecutor testified that while he knew that Piercy was no longer employed by the Woodland Police Department, he did not think it would be difficult to serve him. (RT at 56.) The prosecutor testified that he thought Piercy would be amenable to service in the case. (Id.) The prosecutor testified that the subpoena for Piercy went out on August 17, 2009, which was approximately three weeks before the trial began. (Id. at 55.) The prosecutor testified that it usually takes a day or so to serve a subpoena. (Id.)

As noted in the California Court of Appeal opinion, two investigators for the District Attorney's Office attempted to locate Piercy. Greg Marusin testified that he was asked to locate Piercy about one month ago but he could not remember the exact date. (Id. at 45.) Marusin went to the address listed on the subpoena and was told that Piercy no longer lived there. (Id.) Marusin then checked the on-line database for the California Department of Motor Vehicles ("DMV"). (Id. at 46.) He found that the datebase did not list a new address for Piercy. (Id.) Marusin found an address in Shasta County. (Id.) He called the phone number listed for the address, left a message but did not receive a return call. (Id.)

Bruce Naliboff testified that he received a request to locate Piercy on September 4, 2009. (Id. at 49.) Naliboff located the DMV records for Piercy's girlfriend, but the address listed was the address Piercy had vacated. (Id. at 50.) Naliboff also unsuccessfully attempted to locate Piercy's girlfriend through her apparently former place of employment. (Id.)

The efforts made by the prosecution to locate Piercy were reasonable. While the prosecutor waited until three weeks before trial to subpoena Piercy, knowing he no longer worked for the Woodland Police Department, the prosecutor testified that he believed that Piercy would be amenable to service. Considering the efforts that were made, the failure of the prosecutor's investigators to check utility records or City of Woodland pay records, or do additional follow-up, does not undermine the California Court of Appeal's finding that a good faith effort was made to locate Piercy.  Hardy v. Cross, 132 S. Ct. 490, 495 (2011) ("the Sixth Amendment does not

require the prosecution to exhaust every avenue of inquiry, no matter how unpromising.)

Finally, through counsel petitioner cross-examined Piercy at the preliminary hearing. (See CT at 15-27.) For this reason, and because the prosecutor made a good faith effort to locate Piercy, the undersigned finds no violation of the Confrontation Clause.

Because the denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority, this claim is denied.

Claim Two – Alleged Ineffective Assistance of Counsel

The California Court of Appeal was the last state court to issue a reasoned decision as to this claim. (ECF 13; Respondent's Lodged Document 5.) Accordingly, the undersigned considers whether the denial of this claim by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority. Merolillo v. Yates, 663 F.3d 444, 453 (9th Cir. 2011) (quoting Womack v. Del Papa, 497 F.3d 998, 1002 (9th Cir. 2007)

The California Court of Appeal denied this claim for the reasons stated herein:

> New Trial Motion
>
> After the jury verdict, defense counsel informed the trial court that defendant requested a new trial based upon ineffective assistance of counsel. The trial court refused to hear a new trial motion: (1) because there was no motion before it, (2) because ineffective assistance of counsel is not a statutory ground for new trial pursuant to Penal Code section 1181, and (3) because based on the other two reasons there was no basis to appoint a new counsel.
>
> People v. Simon (1989) 208 Cal.App.3d 841, 847, held that a motion for new trial may be made orally. People v. Fosselman (1983) 33 Cal.3d 572, 582, held that if the trial court is able to determine the effectiveness issue on a motion for new trial, it should do so. Thus, it was error for the court to refuse to consider the new trial motion on the grounds given. We nevertheless conclude defendant was not prejudiced by trial counsel's omission.
>
> Defendant's claim is that counsel should have argued as to the misdemeanor charge in count 2, driving with a revoked license, that the evidence did not prove the revocation was in effect, or that he knew the revocation was in effect.FN1
>
> FN1. Of course, we have no idea whether this was in fact the basis for defendant's claim of ineffective assistance. Notably, defendant made a Marsden motion (People v. Marsden (1970) 2 Cal.3d 118) immediately preceding his request to move for a new trial, and never mentioned his counsel's failure to argue either that he had a valid license or was unaware his license was still revoked.

9

To establish ineffective assistance of counsel, defendant bears the burden of showing: (1) that counsel's performance was deficient, and (2) that absent the error it is reasonably probable the verdict would have been more favorable to him. (People v. Hernandez (2004) 33 Cal.4th 1040, 1052-1053.) We conclude defendant has not met his burden of showing either deficient performance or reasonable probability of a more favorable verdict because the evidence defendant had no valid license was conclusive.

Defendant's license was revoked in conjunction with his prior conviction for violation of Vehicle Code section 20001, subdivision (a), failure to stop at the scene of an injury accident. Vehicle Code section 13350, subdivisions (a)(1) and (c) provide that a violation of section 20001 shall result in a license revocation, which shall not be reinstated until the expiration of one year and until the defendant gives proof of financial responsibility as defined in Vehicle Code section 16430.

Revocation of a license means a person's driving privilege is terminated and the person must obtain a new license after the period of revocation in order to have driving privileges reinstated. (Veh.Code, § 13101.) This indicates that driving privileges are not automatically reinstated, but that the driver must actively apply for a new license. Such action includes submitting proof of financial responsibility.

Exhibit 2 included DMV form DL414, dated May 1, 2009. The form indicated defendant's license was revoked effective January 19, 2006. The "thru date" or termination date for the revocation was blank. The Order of Revocation indicated defendant's license was revoked "for at least one (1) year and until you provide this department with proof of financial responsibility[.]" The DL414 form further indicated defendant was issued an identification card on November 5, 2008, and that proof of financial responsibility was required.

The only reasonable inference from the information provided on the DL414 form is that any action to reissue a license through the date the form was generated (May 1, 2009) would have appeared on the form. Consistent with this inference is the fact that defendant's identification card issue on November 5, 2008, appears on the form. The fact that no entry indicated defendant had been issued a new license, and that proof of financial responsibility by way of a SR22 form was still required, conclusively proved that defendant had no valid license at the time of the offense.

There was also conclusive evidence defendant had been informed of the status of his driver's license. The evidence presented indicated defendant was notified that his license was revoked, that it was revoked for at least one year, and that until January 19, 2010, proof of financial responsibility would be required to obtain a new license.

Given the evidence of defendant's guilt on count 2, defense counsel was not ineffective for failing to argue insufficient proof to the jury.

10

> Conversely, even if defense counsel had made such an argument, it is not reasonably probable the verdict would have been different given the state of the evidence.

(ECF No. 13 at 11-14.)

In the petition, petitioner clarifies that he is claiming that trial counsel was ineffective for failing to challenge the sufficiency of the evidence of "a charge," which the undersigned presumes is the driving with a suspended or revoked license charge.

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693–94.

California Vehicle Code section 14601.1(a) provides,

> (a) No person shall drive a motor vehicle when his or her driving privilege is suspended or revoked for any reason other than those listed in Section 14601, 14601.2, or 14601.5, if the person so driving has knowledge of the suspension or revocation. Knowledge shall be conclusively presumed if mailed notice has been given by the department to the person pursuant to Section 13106. The presumption established by this subdivision is a presumption affecting the burden of proof.

As indicated above, to prove that petitioner violated California Vehicle Code section 14601(a), the prosecutor had to prove two things: 1) petitioner drove on suspended or revoked license; and 2) petitioner had knowledge that his license was suspended or revoked.

At trial, the prosecutor submitted a certified record from the California Department of Motor Vehicles ("DMV") which he claimed demonstrated that petitioner's license was revoked on the date he was arrested, i.e., January 22, 2009. (RT at 152.) This was the only evidence submitted by the prosecutor in support of the driving on a suspended or revoked license charge. During closing argument, the prosecutor argued that this document demonstrated petitioner's guilt:

////

> This is the certified domestic – excuse me, Department of Motor Vehicles record for Trent Wayne Swisher, and what you will see is that on the official record the defendant's driver's license status was revoked. The order was mailed out on 2-21 of 2006. The effective date was January 19th of 2006, and you'll note that on the notice – verbal notice document on file.
>
> In here, the order of the revocation that went out to him, a certificate of mailing, and the verbal notice action in which the DMV employee noted that Mr. Swisher was verbally notified that his license was suspended or revoked, so he was driving a motor vehicle, his license was revoked, and he's been given notice that it was revoked. He's guilty of Count 2.

(Id. at 177.)

While the jury was deliberating, petitioner's counsel made a motion to dismiss the driving on the suspended or revoked license charge. (Id. at 197.) Defense counsel argued that the DMV document stated that petitioner's license was revoked for one year, i.e., from January 2006 to January 2007. (Id. at 197.) Defense counsel argued that there was no evidence that petitioner had received notice that his license was revoked after January 2007. (Id. at 198.) The prosecutor responded that the notice stated that petitioner's license was in revoked status, "so regardless of whether the suspension was for one year, his – it was never reinstated." (Id.) The trial court then denied trial counsel's motion to dismiss finding that there was sufficient evidence for the jury to conclude that petitioner had committed the crime of driving on a suspended or revoked license. (Id.)

On November 14, 2013, respondent filed a copy of the documents referred to by the California Court of Appeal in its opinion denying the instant claim. (ECF No. 27-2.) The undersigned first considers the forms demonstrating that petitioner's license was revoked on the date of the offense, i.e., January 22, 2009. Respondent filed a copy of the DVM Form dated May 1, 2009, stating that petitioner's license was revoked on January 19, 2006, with the "thru date" left blank. (Id. at 2.) This form states that petitioner was issued an "ID" card from the DMV on November 5, 2008, which expires on July 4, 2014. (Id.) Respondent also filed the order of revocation stating that petitioner's license was revoked on January 19, 2006, "for at least one (1) year and until you provide this department with proof of financial responsibility." (Id. at 3.) The California Court of Appeal's inference that any action to reissue petitioner's license through the

date the form was generated (May 1, 2009) would have appeared on the form is reasonable.  The undersigned agrees with the California Court of Appeal that the fact that no entry indicated that petitioner was issued a new license, and that proof of financial responsibility was still required, demonstrated that petitioner had no valid license at the time of the offense.

Respondent also submitted the forms relied on by the California Court of Appeal to find that petitioner had knowledge that his license was suspended.  Respondent provided a document titled "Verbal Notice of Action" dated May 17, 2007.  (Id. at 5.)  This document states that petitioner was advised that his driving privileges were suspended and he could not legally drive until the action was ended by the DMV.  (Id.)  Respondent also provided a proof of service dated May 21, 2006, demonstrating service by mail of the February 21, 2006 Order of Revocation on petitioner.  (Id. at 4.)  These documents demonstrate that petitioner had knowledge that his license was suspended.

Because the evidence demonstrated that petitioner was guilty of driving on a suspended license, his trial counsel was not ineffective for failing to challenge the sufficiency of the evidence of this charge.  The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.

Accordingly, IT IS HEREBY ORDERED that:

1.   Petitioner's application for a writ of habeas corpus is denied; and

2.   A certificate of appealability is not issued.

Dated:  November 21, 2013

sw844.157(2)

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE